NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CASSANDRA THOMAS, | Civil Action No.: 10-cv-6205 (ES) |
| Plaintiff, | **OPINION** |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**SALAS, District Judge**

**I.     Introduction**

Before the Court is an appeal filed by Cassandra Thomas ("Claimant" or "Ms. Thomas") seeking review of the Administrative Law Judge's ("ALJ") decision that denied Ms. Thomas's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.  The Court has considered the submissions in support of and in opposition to the present application, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, the Court vacates the ALJ's judgment and will remand this matter to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Court's Opinion.

**II.     Background**

On December 8, 2004, Ms. Thomas filed an application for SSI benefits. (R. at 52).[1] Ms. Thomas's application was initially denied on October 14, 2005, (*id.* at 24), and again upon reconsideration on February 9, 2006. (*Id.* at 31).

On March 26, 2006, Claimant requested a hearing before an ALJ. (*Id.* at 35). Claimant's request was granted and a hearing was held on September 14, 2007 before ALJ Dennis O'Leary. (*Id.* at 261-277). On October 5, 2007, the ALJ issued a decision that found Ms. Thomas not disabled under the Social Security Act. (*See id.* at 11-21). As a result, the ALJ denied Claimant's request for benefits.

Thereafter, on October 29, 2007, Ms. Thomas filed a Request for Review with the Appeals Council of the Office of Disability Adjudication and Review seeking review of the ALJ's October 5, 2007 decision. (*Id.* at 9-10). Subsequently, on January 18, 2008, the Appeals Council denied Ms. Thomas's request for review, and informed Claimant that to the extent she disagreed with the Council's decision, she may seek court review by filing a civil action. (*Id.* at 4-6).

On March 12, 2008, Ms. Thomas filed a complaint in the United States District Court for the District of New Jersey bearing docket number 08-cv-1255 (PGS). The Commissioner's final decision was reversed and the matter was remanded—by way of a consent order—for further administrative action, consistent with the decision in *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). (*See* Civil Action No. 08-cv-1255, Docket Entry No. 17; *see also* R. at 304-05). The Appeals Council, in turn, issued an order that vacated the Commissioner's final decision and remanded the matter back to the ALJ. (R. at 289).

---

[1] The Court uses the initial "R." to refer to the Administrative Record.

On October 5, 2009, the ALJ conducted a second hearing pursuant to the Appeals Council's order. (*Id.* at 358-87). On January 7, 2010, ALJ Dennis O'Leary found that Claimant was not disabled under the Social Security Act, and once again denied Claimant SSI benefits. (*Id.* at 295-303). Shortly thereafter, on April 1, 2010, Counsel for Mr. Thomas sent the Appeals Council a letter brief outlining the alleged deficiencies contained in the ALJ's January 7, 2010 decision. (*Id.* 283-86). In response, the Appeals Council explained that Counsel's "contentions d[id] not raise any new issues of law or fact . . . . The Appeals Council noted that the ALJ complied with the District Court's order and, as a result, concluded that it lacked jurisdiction to consider Ms. Thomas's case. (*Id.* at 278-80).

In light of the preceding facts, Ms. Thomas filed the instant Complaint, which was assigned to this Court on June 21, 2011. (*See* Docket Entry No. 12). The parties have submitted their respective briefing, and the matter is now ripe for this Court's adjudication.

**III.    Legal Standard**

    **A. Standard to Award Benefits**

To qualify for Social Security benefits, the claimant must first establish that she is "disabled." 42 U.S.C. § 1381. "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotation marks omitted). A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At step one, the Commissioner must determine whether the claimant is currently engaging in any substantial gainful activity. If a claimant has not engaged in substantial gainful activity, the Commissioner turns to step two of the analysis.
>
> (ii) At step two, the Commissioner considers whether the claimant's impairment or combination of impairments is (or are) severe. If the impairment is not severe, the claimant is not disabled and the evaluation ends. If, however, the claimant has a severe impairment, the analysis proceeds to step three of the evaluative process.
>
> (iii) At step three, the Commissioner must decide whether the claimant suffers from a listed impairment. If the claimant meets a listed impairment, she is disabled. If the claimant does not suffer from a listed impairment, or its equivalent, then the analysis proceeds to step four.
>
> (iv) Before considering step four, the Commissioner must first determine the claimant's residual functional capacity. At step four, the Commissioner determines whether based on claimant's residual functional capacity she can still do her past relevant work. If the claimant has the residual functional capacity to perform her last work, she is not disabled. If she is unable to do any past relevant work, the analysis proceeds to the step five.
>
> (v) At step five, the Commissioner must determine whether the claimant is able to do any other work in the national economy, considering her residual functional capacity, age, education, and work experience. If the Commissioner cannot show that work exists, then the claimant is entitled to disability benefits.

20 C.F.R. § 404.1520(a)(4).

### B.   Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and at step two that she suffers from a "severe

impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she suffers from a severe impairment, then the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If she is able to make this showing then she is presumed disabled. If she cannot show that she meets or exceeds a listed impairment, then at step four she must show that her residual functional capacity does not permit her to return to her previous work. 20 C.F.R. § 404.1520(e). If the claimant meets this burden, then at step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(g). If the Commissioner cannot meet this burden then the claimant shall receive disability benefits.

### C.     Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g) and 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In reviewing the ALJ's decision, where there is conflicting evidence, the ALJ "must adequately explain his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Also, the Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*,

181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review in that it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (internal citation omitted).

## IV.     The ALJ's Findings and Final Determination

At step one of the analysis, the ALJ determined that "Ms. Thomas has not engaged in substantial gainful activity since December 8, 2004."  (R. at 297).  At step two, the ALJ explained that the medical evidence supported a finding that Ms. Thomas suffers from three severe impairments—depression, hepatitis C, and asthma.  (*Ibid.*).

At step three, The ALJ concluded that Ms. Thomas "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (*Ibid.*).  In reaching that conclusion, the ALJ made the following findings: (1) "[t]he [C]laimant does not meet or equal listing 5.05 for hepatitis, or chronic liver disease" (*ibid.*); (2) "[w]ith respect to [C]laimant's asthma, . . . [C]laimant did not meet or equal the [requirements of] listing 3.03 (*id.* at 298); and (3) the [C]laimant's mental impairment d[id] not meet or medically equal the criteria of listing 12.04."  (*Ibid.*).

Before proceeding to step four of the analysis, the ALJ evaluated the record and determined that Ms. Thomas retained the "residual functional capacity to perform light work as defined in 20 CFR 416.967(b) . . . ."  (*Id*. at 299).  The ALJ noted, however, that "due to [C]laimant's asthma she must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, extreme cold or heat, wetness, humidity and other pulmonary irritants." (*Ibid.*).  "In addition, the [C]laimant is precluded from working at heights and [is] limited to simple and repetitive work with no public contact and only minimal interaction with supervisors and co-workers.  (*Ibid.*).  At step four, the ALJ found that Ms. Thomas was "unable to perform any past relevant work."  (*Id.* at 301).

Thus, the ALJ proceeded to step five and determined that "considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 302). Consequently, the ALJ concluded that Ms. Thomas was not disabled, and therefore was not entitled to disability benefits. (*Id.* at 303).

## V.      Analysis: Review of the ALJ's Determination

On appeal, Ms. Thomas argues that the ALJ's decision contains the following deficiencies: (1) the ALJ's credibility analysis relating to Claimant's subjective complaints of pain and associated symptoms was not based upon substantial evidence (Cl. Moving Br. at 15-18); (2) the ALJ failed to acknowledge and to accord any weight to the medical findings of the treating and state agency physicians (*id.* at 18-21); and (3) the ALJ's hypothetical question to the vocational expert "failed to incorporate all of Ms. Thomas's exertional and non-exertional limitations. (*Id.* at 22). Below, the Court addresses each alleged deficiency in turn.

### A.      The ALJ's Credibility Analysis

The Court first determines whether the ALJ's credibility analysis relating to Claimant's subjective complaints of pain and associated symptoms was based upon substantial evidence.

The Third Circuit requires an ALJ "to set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000) (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981)). Specifically, the "ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion [which] is sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citing *Burnett*, 220 F.3d at 120). "An ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work *when this testimony is supported by competent medical evidence*." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999)

(emphasis added). However, "the ALJ can reject such claims if he does not find them credible." *Ibid*. Thus, the ALJ has the ability "to evaluate the credibility of a claimant and . . . arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged. . . ." *Cerrato v. Comm'r of Soc. Sec.*, 386 F. App'x 283, 286 (3d Cir. 2010) (internal citation and quotation marks omitted). Nevertheless, "subjective statements of symptoms alone are not sufficient to find disability." *Id.*; *see also* 20 C.F.R. § 404.1529(a).

Ms. Thomas argues that the ALJ failed "to specify which of [her subjective complaints] he found not credible." (Cl. Moving Br. at 15). Ms. Thomas claims that she "testified to ongoing physical and mental limitations," including that she had been "diagnosed [] as being bipolar." (Cl. Moving Br. at 16). Claimant contends that those symptoms "are specifically evident in the record, was [sic] described by Ms. Thomas at both hearings [sic] is consistent with her medical condition, and was [sic] needed to be addressed by the ALJ." (*Ibid.*).

The Court finds that Ms. Thomas's argument lacks merit for the following two reasons. First, the Court finds that Claimant's subjective complaints were considered and fully incorporated into the ALJ's decision.[2] The ALJ specifically noted that Ms. Thomas claimed "she is always tired and fatigued, cannot work well with others and is paranoid, overwhelmed and anxious." (R. at 300). Second, the ALJ discussed the evidence and set forth his rationale in reaching his conclusion. *See Diaz*, 577 F.3d at 504. For example, the ALJ noted that Claimant "complains of medical impairments but has not had any treatment in the last two years, despite receiving Charity Care. (*Ibid.*); *see* SSR 96-7p at 7 (asserting that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as

---

[2] As a preliminary matter, Ms. Thomas's argument that the ALJ should have considered her to be bipolar is baseless. Claimant neither cites to any evidence in the record, nor was this Court able to find any evidence, to support this diagnosis.

prescribed and there are no good reasons for this failure"). The ALJ further noted that Claimant was able to wash dishes, fold laundry, and ride public transportation. (*Ibid.*); *See Boyce v. Barnhart*, 66 F. App'x 297, 300 (3d Cir. 2003) (citing 20 C.F.R. § 416.929(c)(3)) ("An ALJ is required to assess a claimant's complaints of pain, but he may also consider factors such as the claimant's daily activities, measures the claimant uses to treat her pain or symptoms, and her credibility."). The ALJ also cited to the opinions of Dr. Roy, Dr. Rubenstein, and Dr. Fechner to demonstrate that Claimant's subjective complaints of pain were not substantiated by medical evidence. Indeed, Dr. Roy opined that Claimant "did not have any major functional psychiatric symptoms and has never been a psychiatric inpatient." (R. at 300). Dr. Rubenstein observed that the Claimant "appeared distressed" but her "physical examination was unremarkable." (*Ibid.*). Finally, Dr. Fechner's testimony established that Claimant's hepatitis C was under control, her liver function test was normal, and she could perform light work. (*Ibid.*)

In light of the above, the Court concludes that the ALJ considered Claimant's subjective complaints of pain and properly rejected those complaints because they were not "supported by competent medical evidence." *Schaudeck*, 181 F.3d at 433. Furthermore, the ALJ has set forth the reasons for his decision such that this Court is able to conduct a meaningful and judicious review. Accordingly, Claimant's argument that the ALJ's credibility analysis is not based upon substantial evidence in the record lacks merit.

### B.     The Medical Findings of the Treating and State Agency Physicians

The Court next determines whether the ALJ erred by failing to acknowledge and accord any weight to the findings of Dr. Bansil—Claimant's treating physician.

The law in the Third Circuit is clear: "[s]ince . . . [an] ALJ cannot reject evidence for no reason or for the wrong reason . . . , an explanation from the ALJ [indicating] the reason why probative evidence has been rejected is required so that a reviewing court can determine whether

the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Fargnoli*, 247 F.3d at 43; *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (holding that where conflicting medical evidence exists, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason") (internal citation and quotation marks omitted). The ALJ is not required to give a treating physician's opinion controlling weight if he feels it is inconsistent with the other evidence on record. 20 C.F.R. §416.927(d)(2). However, the ALJ is required to specify his reasoning for not giving any weight to that medical testimony. *Ibid.* An "ALJ's failure to explain his implicit rejection of [probative and supportive] evidence [amounts to] error." *Cotter*, 642 F.2d at 707.

Claimant argues "SSR 96-5p requires addressing treating source opinions, even if they are conclusory or addressing issues reserved for the Commissioner." (Cl. Moving Br. at 19). Specifically, Claimant contends that it was error for the ALJ to only rely upon "the updated reports of Drs. Roy, and Rubenstein . . . and the opinion of the medical expert, Dr. Fechner."[3] (*Ibid.*). Conversely, the Government contends that "[a]lthough the ALJ did not specifically discuss Dr. Bansil's opinion in his January 7, 2010 decision, the ALJ fully considered and discussed this opinion in his previous decision, dated October 5, 2007." (Gov. Opp. Br. at 14). Alternatively, the Government argues that "to the extent the ALJ's omission of a second discussion of Dr. Bansil's opinion . . . represents error, the error is harmless." (*Ibid.*).

---

[3] Ms. Thomas also argues that the ALJ erred by not including the opinion of Dr. Shubeck—a non-examining state psychologist. This Court holds that to the extent the exclusion of Dr. Shubeck's opinion constitutes error, the error is harmless. Dr. Shubeck found that plaintiff had no more than mild impairments overall, and could follow simple to moderately difficult instructions, which is an assessment that is consistent with the residual functional capacity for simple, repetitive work.

This Court finds that Claimant has the better of the argument for the following two reasons. First, while the Government concedes that the ALJ did not discuss Dr. Bansil's testimony, it nevertheless contends that this omission should be overlooked because it is harmless error. The Government does not, however, provide citation to any legal authority, which would support the application of harmless error to the circumstances that have been presented by this case. Second, under *Fargnoli*, the ALJ "must give some indication of the evidence that he rejects and his reason for discounting that evidence." 247 F.3d at 43. In this case, although the ALJ discussed the medical evidence of Dr. Roy, Dr. Rubenstein, and Dr. Fechner, (R. at 300-01), the ALJ neither acknowledges nor accords any weight to the findings of Dr. Bansil—Claimant's treating physician. Instead, the ALJ merely states that "[a]ll other opinions that are inconsistent with the substantial evidence, and subsequently the aforementioned residual functional capacity, are therefore given little or no weight." (*Id.* at 301). This statement, however, does not specify the ALJ's reasoning for not giving any weight to the medical testimony of Claimant's treating physician, which under the Third Circuit's decision in *Cotter* amounts to error. *See Cotter*, 642 F.2d at 707.

Accordingly, on remand, the ALJ is directed to address this narrow issue.

### C. Questions Posed to the Vocational Expert

Finally, the Court grapples with the issue of whether the hypothetical questions the ALJ posed to the vocational expert were deficient.

An ALJ is not required "to submit to the vocational expert every impairment alleged by a claimant. Instead the directive [announced] in *Podeworny* is that the hypothetical posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (quoting *Podeworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

"[T]he ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." *Ibid*. To determine whether a limitation has been credibly established, the Third Circuit has provided the following guidelines:

> [l]imitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason. Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it.

*Ibid*. (internal citations and quotation marks omitted).

Ms. Thomas argues that "the ALJ's questions to the [vocational expert] were deficient, since they failed to incorporate all of [her] exertional and non-exertional limitations." (Cl. Moving Brief at 22). Ms. Thomas also asserts that "the additional limitations of malaise and fatigue . . . should have been adopted by the ALJ." (*Ibid*.)

The Court is not persuaded by either of Claimant's arguments. First, Claimant fails to articulate which specific exertional and non-exertional limitations the ALJ failed to incorporate into his decision, and the Court declines to accept Claimant's invitation to speculate which limitations she is referring to. (*See id.* at 21-22). Notwithstanding Claimant's argument, the Court finds that the ALJ did consider Claimant's exertional and non-exertional limitations. Indeed, as discussed above, the ALJ noted "[Claimant] reports that she is always tired and fatigued . . . [and] becomes worn out with even minor exertion." (R. at 300). To that end, the

ALJ limited Claimant to light work.  Thus, Claimant's argument that her exertional and non-exertional limitations were not incorporated into the ALJ's decision is unavailing.

Second, the law in the Third Circuit is clear, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established* limitations."  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis added).  In this case, Claimant contends that the ALJ erred because he did not adopt the additional limitation of malaise.  This argument is flawed, however, because it was not a "*credibly established limitation*."  *Rutherford*, 399 F.3d at 554.  Further undermining Claimant's argument is the fact that she does not cite to any record evidence supporting this limitation.  Accordingly, the ALJ did not err by failing to adopt that limitation.

## VI.     Conclusion

For the foregoing reasons, the judgment of the ALJ is vacated and this case is remanded to the Commissioner for further proceedings consistent with this Opinion.  An appropriate order shall accompany this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**